UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

SHEILA R. GUIDROZ                    CIVIL ACTION NO. 6:13-cv-00463

VERSUS                               JUDGE DOHERTY

COMMISSIONER OF SOCIAL               MAGISTRATE JUDGE HANNA
SECURITY

## REPORT  AND  RECOMMENDATION

Before this Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be AFFIRMED and that this

matter be DISMISSED WITH PREJUDICE.

### BACKGROUND

The claimant, Sheila R. Guidroz, was born on January 21, 1963.[1]  She was 46

years old when she applied for Social Security disability benefits, she was days shy

of her 49th birthday when the hearing was held, and she is 50 years old today.  She

completed high school.[2]  For approximately ten years, she worked as a legal secretary,

---

[1]       Rec. Doc. 7-1 at 30, 51, 61.

[2]       Rec. Doc. 7-1 at 32.

notary public, and transcriptionist for court reporters.[3]  Most recently, she was self-employed.[4]  She stopped working on December 30, 2007, allegedly because of her disabling conditions.[5]

Ms. Guidroz applied for Supplemental Security Income and for Disability Insurance Benefits on August 27, 2010.[6]  In her applications, Ms. Guidroz claimed a disability onset date of December 30, 2007,[7] which corresponds to the date on which she stopped working.  She claims that her disabling conditions are back pain, chronic obstructive pulmonary disease ("COPD"), and anxiety.[8]

On April 5, 2011, it was determined that Ms. Guidroz is not disabled.[9]  She requested a hearing,[10] which was held on January 4, 2012 before Administrative Law Judge ("ALJ") Lawrence T. Ragona.[11]  The ALJ issued an unfavorable ruling on

---

[3]      Rec. Doc. 7-1 at 32, 206.

[4]      Rec. Doc. 7-1 at 206.

[5]      Rec. Doc. 7-1 at 119, 125.

[6]      Rec. Doc. 7-1 at 119, 125.

[7]      Rec. Doc. 7-1 at 119, 125.

[8]      Rec. Doc. 12 at 2.

[9]      Rec. Doc. 7-1 at 70, 71.

[10]      Rec. Doc. 7-1 at 78.

[11]      A transcript of the hearing is found in the record at Rec. Doc. 7-1 at 29-50.

March 19, 2012.[12] Ms. Guidroz requested review by the Appeals Council,[13] but the request was denied.[14] Therefore, the ALJ's ruling is the Commissioner's final decision. In March 2013, Ms. Guidroz instituted this lawsuit, seeking judicial review of the Commissioner's adverse decision.[15] Ms. Guidroz now argues that the Commissioner erred in failing to find that she is disabled.

## ASSIGNMENT OF ERRORS

Although Ms. Guidroz assigned four errors, one of them is nonspecific, one of them does not pertain to the type of benefits Ms. Guidroz applied for, and one is an incomplete statement. Reading her brief as liberally as possible, the undersigned interprets her arguments as presenting the following contentions: (1) that the ALJ did not properly evaluate her residual functional capacity, (2) that the ALJ improperly discounted her credibility; and (3) that the ALJ erred in failing to obtain expert vocational testimony at the hearing.

---

[12]  Rec. Doc. 7-1 at 13-23.

[13]  Rec. Doc. 7-1 at 8.

[14]  Rec. Doc. 7-1 at 4.

[15]  Rec. Doc. 1.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[16]  If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[17]  Substantial evidence is more than a mere scintilla and less than a preponderance.[18]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[19]  Finding substantial evidence requires scrutiny of the entire record as a whole.[20]  In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[21]

---

[16]    See, e.g., *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

[17]    42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995), citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

[18]    See, e.g., *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)

[19]    *Boyd v. Apfel,* 239 F.3d at 704; *Hames v. Heckler*, 707 F.2d at 343-44.

[20]    *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[21]    *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[22]  Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[23]  Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities for pay or profit.[24]

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found disabled.  At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four.

---

[22]     *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

[23]     42 U.S.C. § 423(d)(1)(A).

[24]     20 C.F.R. § 404.1572.

If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[25]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[26] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[27]   The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do her past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[28]

The claimant bears the burden of proof on the first four steps.[29]   At the fifth step, however, the Commissioner bears the burden of showing that the claimant can

---

[25]      See, e.g., *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[26]      20 C.F.R. § 404.1520(a)(4).

[27]      20 C.F.R. § 404.1545(a)(1).

[28]      20 C.F.R. § 404.1520(e).

[29]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

perform other substantial work in the national economy.[30]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[31]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[32]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[33]

In this case, the Commissioner found, at step one, that Ms. Guidroz has not engaged in substantial gainful activity since her alleged disability onset date of December 30, 2007.[34]  That finding is supported by evidence in the record.

At step two, the ALJ found that Ms. Guidroz has the following severe impairments:  degenerative disc disease and COPD.[35]  This finding is also supported by evidence in the record.  Ms. Guidroz has undergone three surgical procedures on

---

[30]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[31]      *Fraga v. Bowen*, 810 F.2d at 1304.

[32]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[33]      *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

[34]      Rec. Doc. 7-1 at 15.

[35]      Rec. Doc. 7-1 at 16.

her back, in 1995, 1997, and 2001.[36] She complains of continuing low back pain, and the record reflects that she is being treated conservatively by Dr. Paul N. Rees for this pain.[37]  Ms. Guidroz has been diagnosed with COPD, and she treated with Dr. Richard H. Fei for this condition from 2005 to 2010.[38] The record contains evidence that she treated with Dr. James Bienvenu for gastrointestinal complaints,[39] but she does not claim to be disabled because of a gastrointestinal condition.  The record also indicates that she consulted with a cardiologist.[40] Again, however, Ms. Guidroz does not claim to have a disabling heart condition.  Dr. Fei's records are extremely difficult to read, but no complaint of anxiety or treatment for anxiety was detected in them. Dr. Rees's records are only slightly more legible.  In neither doctor's records were complaints of or treatment for anxiety located.  Ms. Guidroz also treated with Dr. Kelly L. Cobb.[41]  The problems noted by Dr. Cobb include dietary surveillance/ counseling for obesity, prediabetes, vitamin D deficiency, leukocytosis, COPD, fatigue, acute sinusitis, neck pain, headache, menopausal symptoms, and

---

[36]     Rec. Doc. 7-1 at 271.

[37]     Rec. Doc. 7-1 at 249-250, 257-258, 310, 312, 315, 316-317, 321-322.

[38]     Rec. Doc. 7-1 at 230, 231, 234, 236, 238, 240, 242, 243, 244, 247.

[39]     Rec. Doc. 7-1 at 294 to 306.

[40]     Rec. Doc. 7-1 at 212 to 219.

[41]     Rec. Doc. 7-1 at 326 to 353.

tremulousness (based on complaints of irritability and depression).[42]  Neither anxiety nor low back pain is among the problems complained of to or treated by Dr. Cobb. The only complaint of anxiety found in the records of Ms. Guidroz's treating physicians is in the medical history provided to the cardiologist on June 9, 2007.[43] Ms. Guidroz also complained of anxiety when she was examined by consulting physician Dr. Haase and consulting psychologist Dr. Lonowski.[44]  At the hearing, she testified that the medication she takes for anxiety helps that condition.

At step three, the ALJ found that Ms. Guidroz does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[45] Ms. Guidroz does not argue that this finding was incorrect.

At the next step of the process, the ALJ found that Ms. Guidroz retains the residual functional capacity to perform a modified range of light work.[46]  At step four, the ALJ found that Ms. Guidroz is capable of performing her past relevant work.[47] Therefore, the ALJ's finding of nondisability was made at step four, and he did not

---

[42]      Rec. Doc. 7-1 at 326-353.

[43]      Rec. Doc. 7-1 at 213.

[44]      Rec. Doc. 7-1 at 271, 276.

[45]      Rec. Doc. 7-1 at 18.

[46]      Rec. Doc. 7-1 at 18.

[47]      Rec. Doc. 7-1 at 22.

progress to step five.  The ALJ then concluded that Ms. Guidroz was not disabled

from December 30, 2007 through the date of the decision.[48]  These findings are also

supported by substantial evidence in the record.

**DISCUSSION**

## I.   THE ALJ PROPERLY EVALUATED MS. GUIDROZ'S RESIDUAL FUNCTIONAL CAPACITY

Ms. Guidroz's first and primary argument is that the ALJ did not properly

evaluate her residual functional capacity.  She argues that "the record is lacking in

any concrete medical evidence that indicates that she could in fact do any light or

even sedentary work."  (Rec. Doc. 12 at 5).  This statement evidences confusion

concerning the burden of proof.  Ms. Guidroz bears the burden of proving that she is

disabled and therefore unable to work.  Furthermore, a finding of disability is based

on a diagnosis only when the claimant's impairment meets a listing for a presumptive

disability.  When, as here, the claimant's impairment does not satisfy a listing – and

Ms. Guidroz does not argue that her COPD, back pain, or anxiety satisfies a listing

– a finding of disability must be based upon functional impairment.  "The mere

presence of some impairment is not disabling per se.  Plaintiff must show that she was

so functionally impaired by her [claimed condition or medical diagnosis] that she was

---

[48]      Rec. Doc. 7-1 at 23.

precluded from engaging in any substantial gainful activity."[49]  Accordingly, the mere fact that Ms. Guidroz has been diagnosed with and treated for various conditions does not mean that she is disabled.  The Commissioner did not err in failing to find her disabled because there is no evidence contradicting her treatment or diagnosis.

The term "residual functional capacity" refers to the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  In other words, a claimant's "residual functional capacity is the most [he or she] can still do despite [his or her] limitations."[50]  "A person's 'residual functional capacity' is determined by combining a medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work."[51]  The residual functional capacity is based on all evidence, including medical evidence.[52]  In determining Ms. Guidroz's residual functional capacity, the ALJ considered all of Ms. Guidroz's symptoms, determined whether there were underlying medical impairments that could reasonably be expected to produce those symptoms, and then

---

[49]     *Hames v. Heckler*, 707 F.2d at 165.

[50]     20 C.F.R. § 404.1545(a)(1).

[51]     *Hollis v. Bowen*, 837 F.2d 1378, 1386–87 (5th Cir. 1988).

[52]     *Bayer v. Colvin*, No. 13-30524, 2014 WL 541294, at *7 (5th Cir. Feb. 12, 2014), citing SSR 96–8p.

evaluated the intensity, persistence, and limiting effects of the symptoms on Ms. Guidroz's functioning.  The medical records contain no functionality evaluation by any of Ms. Guidroz's doctors.  Although the records demonstrate that she is being treated for low back pain and COPD, there is no diagnosis of anxiety by any of Ms. Guidroz's physicians.

On November 6, 2010, Ms. Guidroz was examined by Dr. Anthony Haase[53] at the request of Disability Determination Services.  She complained to him of COPD, back problems, and anxiety.[54]  She told Dr. Haase that she underwent back surgery in 1995, 1997, and 2001 and that she was in an automobile accident in 2003 that further aggravated her back condition.  She explained that her back pain was being treated with pain medication, that no further surgery was being discussed, that she had no urinary or bowel incontinence and no saddle anesthesia.  She also reported that she worries a lot and suffers with anxiety brought on by stress.  She further stated, however, that this condition is relieved with her medications.  Dr. Haase evaluated her range of motion in various joints, observed her gait, tested her reflexes, strength, and muscle tone, x-rayed her lumbrosacal spine, and evaluated her cardiac thoracic ratio.  He diagnosed her with COPD, lumbago, and anxiety.  He found that

---

[53]     Dr. Haase's report is found in the record at Rec. Doc. 7-1 at 271-274.

[54]     Rec. Doc. 701 at 271.

-12-

she walks without difficulty.  He found that her grip strength, dexterity, and grasping ability are within normal limits.  He concluded that "the claimant should be able to sit, walk, and/or stand for a full work day" and "is not limited in lifting or carrying." Ms. Guidroz presented nothing other than her own hearing testimony in an attempt to refute Dr. Haase's conclusions.

Ms. Guidroz was also evaluated by a psychologist, Dr. Daniel J. Lonowski, on January 10, 2011.[55]  Although she complained to Dr. Lonowski of low back pain and right hand pain, she stated that the pain was controlled with medication and that she can stand for ninety minutes at a time and walk for thirty minutes at a time, although she must use an inhaler for shortness of breath after walking for thirty minutes.  Ms. Guidroz also complained of COPD and frequent sinus trouble but reported that she continues to smoke and has been anxious and depressed because of health issues. Testing conducted by Dr. Lonowski revealed that her attention span and ability to concentrate were normal and that she has overall average intelligence.  Dr. Lonowski diagnosed her with a mood disorder due to chronic pain and nicotine dependence, and he noted that she was sexually abused as a child and has a history of alcohol abuse. Dr. Lonowski noted that "Ms. Guidroz believes that she is disabled due to chronic pain, although she admitted that her pain is controlled with medication."   Dr.

---

[55]        Dr. Lonowski's report is in the record at Rec. Doc. 7-1 at 276-279.

Lonowski observed her to be short of breath and noted that she had a severe cough. He concluded that, "despite her Mood Disorder and other physical problems, she is able to perform light activities that would be useful in a job."  In particular, he found that she can pay attention and concentrate without difficulty.  Ms. Guidroz presented nothing other than her own hearing testimony in an effort to refute Dr. Lonowski's conclusions.

Other than the reports from Dr. Haase and Dr. Lonowski, the record contains no opinion from any other doctor explaining how Ms. Guidroz's back pain, COPD, and anxiety affect her ability to function in the workplace.  The lack of limitations imposed by a physician evaluating the claimant's condition supports the ALJ's decision that Ms. Guidroz can perform light work.[56]

Ms. Guidroz accurately points out that, under ordinary circumstances, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability."[57]  Here, the ALJ considered the diagnoses and treatment notes of Ms. Guidroz's physicians, but none of them offered opinions concerning her functionality.  Therefore, the ALJ cannot be faulted for

---

[56]  See *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).

[57]  *Perez v. Barnhart*, 415 F.3d at 465–66 (5th Cir. 2005), quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

failing to rely more heavily upon the opinions of her doctors in evaluating her residual functional capacity.

There is no evidence that the ALJ applied an inappropriate legal standards in evaluating Ms. Guidroz's residual functional capacity, and his assessment of her residual functional capacity was based on substantial evidence in the record. Therefore, the undersigned finds that the ALJ did not err in evaluating Ms. Guidroz's residual functional capacity.

## II.   THE ALJ PROPERLY DISCOUNTED MS. GUIDROZ'S CREDIBILITY

Ms. Guidroz's second argument is that the ALJ improperly discounted her credibility.  The ALJ has the responsibility to evaluate the claimant's credibility and to resolve questions of credibility.[58]  The ALJ's credibility evaluations are entitled to considerable deference.[59]  In this case, the ALJ properly found Ms. Guidroz not to be fully credible because she testified that her limitations are greater than those reflected in the ALJ's residual functional capacity finding and are not mirrored in her medical records or exhibited in her daily activities.

As noted previously, the record does not contain a functional evaluation by any of Ms. Guidroz's physicians.  Therefore, the record lacks any evidence, other than

---

[58]     *Masterson v. Barnhart*, 309 F.3d at 272.

[59]     *McKnight v. Astrue*, 340 Fed. App'x 176, 181 (5th Cir. 2009); *Newton v. Apfel*, 209 F.3d at 459.

Ms. Guidroz's own testimony and the conclusions of the consulting physicians, concerning how back pain, COPD, and anxiety affect Ms. Guidroz's ability to function.

Furthermore, any inconsistencies between Ms. Guidroz's testimony about her limitations and her daily activities are "quite relevant" in evaluating her credibility.[60] Here, the ALJ took into consideration Ms. Guidroz's complaints concerning her conditions in evaluating her residual functional capacity.  Ms. Guidroz testified at the hearing that she lives independently for twenty days at a time, taking care of her animals and all of her own needs, including grooming, shopping, and household chores.  She watches television, listens to music, reads, and checks her e-mail and Facebook account on the computer.  She drives, exercises, and prepares her own meals.  It is appropriate for an ALJ to consider the claimant's daily activities when deciding the claimant's disability status.[61]

Although Ms. Guidroz complains of allegedly disabling anxiety, the ALJ properly found this condition to cause only minimal limitations on her ability to work.[62]  No diagnosis of anxiety was found in her medical records, but Ms. Guidroz

---

[60]     *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990).

[61]     *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995); *Reyes v. Sullivan*, 915 F.2d at 155.

[62]     Rec. Doc. 7-1 at 16.

testified at the hearing that Dr. Rees treats her for this condition by prescribing medication.[63]  She acknowledged that the medication helps and that she does not see a mental health professional for this condition.[64]   An impairment that can be controlled or remedied by medication or therapy cannot serve as a basis for finding disability.[65]  Therefore, the ALJ's assessment of the effect of Ms. Guidroz's anxiety on her residual functional capacity was not erroneous.

Ms. Guidroz also complains of allegedly disabling back pain.  The record reflects that she is being treated conservatively for that pain, and she acknowledged to Dr. Haase and Dr. Lonowski that medications help to control her pain.[66]  The mere existence of pain is not an automatic ground for obtaining disability benefits.[67]   A claimant's symptoms, including pain, will be determined to diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be

---

[63]      Rec. Doc. 7-1 at 40.

[64]      Rec. Doc. 7-1 at 40.

[65]      See *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Johnson v. Sullivan*, 894 F.2d 863, 686 (5th Cir. 1990).

[66]      Rec. Doc. 7-1 at 271, 276.

[67]      *Nugent v. Astrue*, 278 Fed. App'x 423, 427 (5th Cir. 2008); *Hames v. Heckler*, 707 F.2d at 166.

accepted as consistent with the objective medical evidence.[68]  Subjective complaints of pain must be corroborated by objective medical evidence.[69]  In this case, it is clear that there is a valid objective basis for Ms. Guidroz's pain.  But pain is a disabling condition only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[70]  Ms. Guidroz's pain does not fit in that category. Furthermore, as noted previously, an impairment that can be controlled or remedied by medication or therapy cannot serve as a basis for finding disability.[71]  Since Ms. Guidroz obtains some relief from her chronic pain with prescription medications, her pain is not disabling.

The ALJ recognized, with regard to Ms. Guidroz's COPD, that she continues to smoke cigarettes against medical advice.[72]  It is within the ALJ's discretion to discount a claimant's subjective complaints based on her decision to not follow her physicians' recommendations.[73]  This disregard of medical advice may also be an

---

[68]     20 C.F.R. § 404.1529(c)(4).

[69]     *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

[70]     *Nugent v. Astrue*, 278 Fed. App'x at 427; *Chambliss v. Massanari*, 269 F.3d at 522.

[71]     See *Johnson v. Bowen*, 864 F.2d at 348; *Johnson v. Sullivan*, 894 F.2d at 686.

[72]     Rec. Doc. 7-1 at 33, 39, 277, 278, 331.

[73]     *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991).

indication that her symptoms were not as severe as she contended.[74]  Therefore, the ALJ properly discounted Ms. Guidroz's testimony regarding the allegedly disabling nature of her COPD.

Inconsistent statements made by Ms. Guidroz also damaged her credibility. For example, her estimation of the amount of weight she can carry and how long she can sit and stand varied widely.[75]  She also testified at the hearing that she has problems with concentration[76] but also reported that she spends a lot of time reading,[77] which inherently requires concentration skills, and can focus on her reading for long periods as long as she is not interrupted.[78]

In summary, there is substantial evidence in the record supporting the ALJ's decision to discount Ms. Guidroz's credibility and no evidence that an improper legal standard was applied by the ALJ in reaching his conclusion in this regard.  Therefore, this assignment of error lacks merit.

---

[74]  *Tolliver ex rel. Tolliver v. Astrue*, No. CIV.A. 11-0039, 2012 WL 566906, at *6 n. 8 (W.D. La. Jan. 23, 2012) report and recommendation adopted, No. CIV.A. 11-0039, 2012 WL 566898 (W.D. La. Feb. 21, 2012).

[75]  Rec. Doc. 7-1 at 34, 158, 163, 271.

[76]  Rec. Doc. 7-1 at 43-44.

[77]  Rec. Doc. 7-1 at 37.

[78]  Rec. Doc. 7-1 at 46.

## III.   THE ALJ DID NOT ERR IN FAILING TO OBTAIN EXPERT VOCATIONAL TESTIMONY AT THE HEARING

Ms. Guidroz's third argument is that the ALJ erred in failing to obtain expert vocational testimony at the hearing.  At step four of the sequential evaluation, however, the claimant has the burden of proving that she is incapable of meeting the physical and mental demands of all of her past work.[79]  Since the burden of proof was on the claimant with regard to step four, the ALJ was not required to present testimony from a vocational expert.

Furthermore, Ms. Guidroz has past relevant work as a legal secretary, which is classified by the Department of Labor as sedentary.[80]  A determination that a claimant can perform light work generally means that she can also perform sedentary work.[81]  Therefore, substantial evidence supports the ALJ's finding that Ms. Guidroz can perform her past relevant work.

There is no evidence that the ALJ applied inappropriate legal standards in ruling on this case, and the ALJ's decision is based on substantial evidence in the

---

[79]     See, e.g., *Haas v. Barnhart*, 91 F. App'x 942, 945 (5th Cir. 2004); *Constancio v. Shalala*, 56 F.3d 1386 (5th Cir. 1995); *Gonzales v. Shalala*, 48 F.3d 532 (5th Cir. 1995).

[80]     Rec. Doc. 7-1 at 22.

[81]     20 C.F.R. §§ 404.1567(b), 416.967(b).

record.   Ms. Guidroz failed to prove that she is disabled.   Accordingly, the undersigned recommends that Commissioner's ruling should be affirmed.

### CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned finds that the Commissioner's ruling that Ms. Guidroz is not disabled is supported by substantial evidence and was reached by application of the proper legal standards.   Accordingly,

**IT IS RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this matter be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 16th day of May 2014.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE